**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  )  | CR 11-8056-PCT-JAT |
| Plaintiff,  ) | |
|   )  | **ORDER** |
| vs.  )  | |
|   )  | |
| Danny Michael John, Jr.,  ) | |
| Defendant.  )  | |

Defendant is charged with two counts of Aggravated Sexual Abuse, one count of Sexual Abuse of a Minor, and one count of Abusive Sexual Contact. All of the charges relate to Defendant's daughter. Prior to the indictment in this case, agents from the FBI interviewed Defendant on three occasions. Defendant moves to suppress his statements made at all three interviews on voluntariness grounds. Doc. 26. The Court held a hearing on this motion on January 3, 2012.

**I.     Factual Background**

**A.     August 20, 2009 Interview**

On August 20, 2009, FBI agent Fogarty and a Navajo Nation Criminal Investigator interviewed Defendant at the Navajo Department of Criminal Investigation Office in Chinle, Arizona. The interview was arranged by the authorities asking Defendant, via telephone, to come in for an interview, to which Defendant agreed. Defendant provided his own transportation to and from the interview.

Defendant was not *Mirandized* before this interview. Defendant was told at the beginning of the interview that it was voluntary that he was not under arrest, and that he would not be arrested at the end of the interview. No promises or threats were made during the interview.

During this interview, Defendant generally denied ever having sexual contact with his daughter. However, Defendant did state there was one night where he came home intoxicated where something might have happened. Defendant ultimately agreed to take a polygraph examination at a later date. Defendant left the Navajo Department of Criminal Investigation Office at the end of the interview.

### B.     September 18, 2009 Interview

Defendant appeared for the polygraph examination on September 18, 2009. Although the Government argues Defendant was not in custody for this interview, as part of the FBI's standard practices, Defendant was *Mirandized*. Defendant was also told he had the right to refuse the polygraph examination. Defendant signed waivers of his rights.

After being *Mirandized*, but before the polygraph examination, Defendant was again interviewed. Defendant again generally denied any wrong doing, but reiterated that there was a night that he came home drunk that he did not remember.

The polygraph examination was then administered by agent Fuller. After the exam, Defendant was advised that he failed the exam. After being advised that he failed, Defendant was again interviewed. In that interview, Defendant admitted to pinching the his daughter's nipples and showing her how to rub her breasts so that they would grow properly. The agent typed this statement into the computer and Defendant signed it. Defendant in his written motion disputes that this is what he told the agent, and states that he told the agent at the time that the written statement is not what he said or meant.[1] Defendant left after this post-polygraph interview.

---

[1] No testimony or evidence was presented at the hearing to support this argument. Defense counsel did cross examination the agent who typed the statement about its accuracy, but the agent testified that the typed statement (Exhibit 7) was exactly Defendant's statement.

### C. February 28, 2011 Interview

On February 28, 2011, two new FBA agents interviewed Defendant. The agents went to Defendant's home after having made an appointment to speak to him this day. The agents saw Defendant's father outside and requested to speak with Defendant. Defendant came outside and the agents interviewed Defendant in one of the agent's unmarked vehicles. The agents testified that they conducted the interview in the car because there were family members in the home and it was cold outside.

Defendant was not *Mirandized*. The interview was recorded. Defendant sat in the front passenger seat of the vehicle, with one agent in the driver's seat and one agent in the back seat. Defendant was not handcuffed, neither agent displayed a weapon, and the agents were in plain clothes. The agents told Defendant he was not going to be arrested at the end of the interview and that he could get out of the car at any time.

During this interview, Defendant again admitted to rubbing his daughter's breasts to initiate growth. The agents then told Defendant that people make mistakes but that they can move forward from those mistakes if they take responsibility for the mistakes. The agents also told Defendant that his relationship with his daughter would be negatively affected if Defendant did not take responsibility for what he did and that his daughter would not trust him.

After the agent's statements, Defendant stated that he returned from a party drunk and woke up to find his daughter on top of him engaging in sexual intercourse with him. Defendant stated that because he believed this was his girlfriend, he continued to have sexual intercourse with her. He claimed he eventually realized it was his daughter and was confused and angry that his daughter would instigated sexual intercourse with him.

At the end of this interview, Defendant left the vehicle and returned to his home. Defendant was ultimately arrested in April of 2011.

## II. Law on voluntariness[2]

A "confession is involuntary only if the police use coercive means to undermine the suspect's ability to exercise his free will." *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002). Impermissible coercive activity can include lengthy questioning, deprivation of food or sleep, physical threats of harm, and psychological persuasion. *United States v. Kelley*, 953 F.2d 562, 565 (9th Cir. 1992) (overruled on other grounds by *Unites States v. Kim*, 105 F.3d 1579, 1581 (9th Cir. 1997)). When a suspect alleges psychological coercion, the relevant question is whether the suspect's will was overborne when he confessed. *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993). The factors the Court should consider in determining if the suspect's will was overborne "include the degree of police coercion, the length, location and continuity of the interrogation, and the defendant's maturity, education, physical condition, mental health, and age." *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011).

In addition to these factors articulated by the courts, Congress has codified the following factors for the Court to consider in determining voluntariness:

1. the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest but before arraignment;
2. whether such defendant knew of the nature of the offense with which he was charged or of which he was suspected at the time of making the confession,
3. whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him,
4. whether or not such defendant had been advised prior to questioning of his right to assistance of counsel, and
5. whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b).

---

[2] In its response to Defendant's motion, in addition to discussing voluntariness, the Government argues that no *Miranda* violation occurred. At the hearing, defense counsel made clear that while Defendant is raising the lack of *Miranda* warnings at two of the interviews in the context of voluntariness, Defendant is not arguing that a *Miranda* violation occurred.

# III. Analysis

## A. August 20, 2009 Interview

Defendant arrived at the August 20, 2009, interview via his own transportation, he was not threatened and no promises were made to him. Defendant was told that the interview was voluntary, that he was not under arrest, and that he would not be arrested at the end of the interview. The tone of the interview was cordial.

At the interview, Defendant denied any wrongdoing (Defendant did mention one night that he could not remember). Defendant is not young and is enrolled in college. Defendant did not appear to be under the influence of any substances at the interview. Given the circumstances surrounding this interview and Defendant's denial of any wrongdoing, the Court finds that the statements were voluntary and Defendant's will was not overborne.

## B. September 18, 2009 Interview

Although Defendant was *Mirandized* at the beginning of this interview and waived those rights, and was told the polygraph examination was not required, and waived that right, Defendant argues that the pressure put on him at the August 20, 2009 interview was the reason he agreed to the polygraph. First, the Government does not seek to introduce the results of the polygraph into evidence. Moreover, Defendant denied any wrongdoing during the polygraph examination. Thus, the Court does not find Defendant's will was overborne into confessing as a result of the polygraph examination because he did not confess.

Following the polygraph examination and in response to additional questioning, Defendant admitted to rubbing his daughter's breasts to get them to grow properly. The Court does not find that simply because Defendant was administered a polygraph and told that he failed, that his subsequent statements were involuntary. The interview was in a reasonable tone, the Agent did not have his weapon drawn, Defendant was told all of his rights and waived those rights. There is nothing about this post-polygraph interview that would cause the Court to conclude that Defendant's statements were involuntary.

## C. February 28, 2011 Interview

As discussed above, this interview took place in an FBI agent's vehicle outside of

1  Defendant's home. The interview took approximately 1.5 hours. Defendant was not
2  *Mirandized*. The interview was recorded.
3  Defendant's motion to suppress is based on whether the statements made during the
4  interview were voluntary. Defendant argues that during the interview the questioning
5  became very aggressive. Defendant further points out that the Agent said Defendant should
6  explain how it happened so his daughter did not have to "grow up without her dad."
7  Defendant then made the statements detailed above about his daughter instigating sexual
8  intercourse with him while he was intoxicated. Thus, the Court must determine whether the
9  agents' questioning and suggestion that Defendant's daughter would grow up without her dad
10 were sufficient to threaten or coerce Defendant into confessing.
11 By way of example, in *United States v. Tingle*, 658 F.2d 1332, 1334 (9th Cir. 1981),
12 the Court,

> found a confession involuntary where the interrogating officer enumerated the
> suspect's crimes and her possible sentences; told her that he would put in a
> good word with the prosecution if she cooperated; told her that he would tell
> the prosecutor she was "stubborn or hard-headed" if she refused; suggested
> that her boyfriend had already implicated her; and told her that she would not
> see her two-year old again "for a while" if she didn't talk.

*United States v. Bautista*, 362 F.3d 584, 592-93 (9th Cir. 2004).

With regard to a defendant's children, the Court of Appeals has explained,

> *Haynes*[3] and *Lynumn*[4] demonstrate that threats and promises relating to one's
> children carry special force. Interpreting these cases, the Ninth Circuit has
> previously concluded that "[t]he relationship between parent and child
> embodies a primordial and fundamental value of our society." *United States
> v. Tingle*, 658 F.2d 1332, 1336 (9th Cir.1981). When interrogators

---

[3] In *Haynes*, the Court found a confession involuntary whether the suspect was held incommunicado and was promised communication with and access to family if the suspect confessed. *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) (citing *Haynes v. Washington*, 373 U.S. 503, 514 (1963)).

[4] In *Lynumn*, the Court found a confession involuntary when the suspect's confession occurred only after, "the police had told her that state financial aid for her infant children would be cut off, and her children taken from her, if she did not 'cooperate.'" *Brown v. Horell*, 644 F.3d 969, 979-80 (9th Cir. 2011) (quoting *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963)).

> "deliberately prey upon the maternal [or paternal] instinct and inculcate fear in a [parent] that [he or] she will not see [his or] her child in order to elicit 'cooperation,' they exert the 'improper influence' proscribed by *Malloy* [ v. *Hogan*, 378 U.S. 1, 7 (1964) ]." *Tingle*, 658 F.2d at 1336.

*Brown v. Horell*, 644 F.3d 969, 980 (9th Cir. 2011) (footnotes added).[5]

However, even considering the special nature of the parent-child relationship, the Court should not find the statement involuntary if the fear of the suspect is not reasonable.

> While a court must look at the "possibly vulnerable subjective state of the person who consents," the court must also look at the "reasonableness of the fear." *United States v. Castrillon*, 716 F.2d 1279, 1283 n. 1 (9th Cir. 1983) [citing reference omitted]. Specifically, the court must determine whether "a person in [defendant's] position would reasonably have feared" her children being taken into custody in light of the totality of the officers' conduct. *Castrillon*, 716 F.2d at 1283 n.1 ("To look only to Castrillon's subjective fears, without considering the reasonableness of his alleged state of mind, would unduly hamper application of the totality of the circumstances test.").

*United States v. Patayan Soriano*, 361 F.3d 494 (9th Cir. 2004) (finding that the consent to search was voluntary at the time consent was given because by the time consent was given, the officers had clarified that the children would only be taken away if Defendant was arrested; the Court also noted that without this clarification, the consent would have been involuntary).

If the Agent's statement that Defendant should explain what happened so Defendant's daughter would not have to "grow up without her dad" is a threat that Defendant's relationship with his child would be impaired unless he cooperated, then under Ninth Circuit law, any statement made thereafter is involuntary and should be suppressed.[6]

---

[5] In *Brown*, the Court found the confession involuntary when the officer repeatedly told the suspect that the officer wanted the suspect to get to see his unborn baby and that the "truth" was going to let him be there for his baby. *Brown v. Horell*, 644 F.3d at 980-81. In *Brown*, the officer referenced the baby or the suspect seeing the baby at least 15 times. *Id.*

[6] Specifically, at page 26 of the transcript at Doc. 44-2 (Exhibit 10 from the hearing), the Agent states, "You still love that little girl. I think you love her with all your heart. <u>You'd do anything to get her back.</u> And more than anything, I think you would do anything to get forgiveness from that little girl. Because that's what this is all about. When it comes down to it in life, the only thing you have is your family. <u>And if you don't step up and take responsibility for what happened, that little girl is going to grow up without her dad.</u> That's

Generally, the Court finds that the statement made by law enforcement in this case is too vague to be considered a threat that would overbear someone's will in most circumstances. However, the sentiment that Defendant should explain his mistake so that his daughter did not have to grow up without her father is within the heightened area of a parent's relationship with his or her child as explained in *Brown*.

As discussed above, Defendant did not receive *Miranda* warnings. Defendant was in a vehicle with two agents. The agents questioned Defendant for 1.5 hours. One agent said that Defendant should explain his mistake so that his daughter would not have to grow up without her father. Given the Ninth Circuit's guidance on the special and sensitive nature of the parent-child relationship, the fact that Defendant confessed after the agent told him he should explain his mistake so that his daughter would not have to grow up without a dad, and the totality of the circumstances surrounding the interrogation, the Court finds that the statements made after the agent told Defendant his daughter would grow up with out a dad if he did not explain his mistake must be suppressed as involuntary.[7]

## IV. CONCLUSION

Based on the foregoing, Defendant's motion to suppress (Doc. 26) is granted in part and denied in part as follows:

---

the bottom line the truth of it." (emphasis added). Thereafter, on at least 14 separate occasions, the Agent said some version of: the only way to for Defendant to make it right with his daughter was to take responsibility for what happened.

[7] At the hearing, the Government argued that to the extent there is heightened concern regarding whether a statement is voluntary when the officers inject the suspect's relationship with his or her child into the interrogation, that concern should not apply when the alleged victim is the very child brought up by the officers. In other words, the Government argues that while bringing up a child completely unrelated to the alleged crime might be perceived as a threat, bringing up the child who is the alleged victim in questioning about whether she is a victim is necessary and natural and would not be perceived as a threat, but rather as the very topic of the conversation. While the Court finds this distinction plausible, the Court has found no law supporting such a distinction. Moreover, in this particular case, the agent suggesting that Defendant's daughter would grow up with out her dad if Defendant did not take responsibility went beyond merely discussing the child in the context of the alleged crime. Accordingly, the Court has declined to draw such a distinction in this case.

- with respect to the August 20, 2009 interview, the motion is denied;
- with respect to the September 18, 2009 interview, the motion is denied; and
- with respect to the February 28, 2011 interview, the motion is granted such that all statements made after the agent said Defendant should explain his mistake so that his daughter did not have to grow up without her dad are suppressed as involuntary; the motion is denied with respect to the statements up to that point.

DATED this 6th day of January, 2012.

James A. Teilborg
United States District Judge